IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **RASOL DELA CRUZ and CARRIE OBERTS,** on behalf of themselves and all other similarly situated, | Case No. 23-17032 |
| Plaintiffs, | Judge _____ |
| v. | |
| **SMITHFIELD PACKAGED MEATS CORP.** | |
| Defendant. | |

### CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. Plaintiffs Rasol Dela Cruz and Carrie Oberts, on behalf of themselves and all others similarly situated, bring this putative class action against Defendant Smithfield Foods located at 410 S. Kirk Road, St. Charles, Illinois 60174 as a result of property damages suffered due to noxious odor emissions from Defendant's processed meat production facility.

2. Defendant owns and operates the Smithfield Foods meat processing plant (hereinafter, the "Facility") located at 410 S. Kirk Road in Kane County, St. Charles, Illinois, which releases noxious odors onto Plaintiffs' properties, constituting a public and private nuisance and causing property damage.

### PARTIES

3. At all times relevant hereto, Rasol Dela Cruz has resided and intends to remain at 230 Lakeside Court, #1131, St. Charles, Illinois 60174. Plaintiff is a citizen of the State of Illinois.

1

4. At all times relevant hereto, Plaintiffs Carrie Oberts has resided and intends to remain at 3405 Charlemagne Lane, St. Charles, Illinois 60174. Plaintiff is a citizen of the State of Illinois.

5. Defendant Smithfield Packaged Meats Corp. is a foreign corporation organized under the laws of Delaware with its principal place of business in Smithfield, Virginia.

6. Defendant's corporate activities are directed, controlled, and coordinated from its headquarters in Virginia.

7. Defendant, including its predecessors and agents, either constructed or directed the construction of the Facility and exercised control and ownership over the Facility at all times relevant hereto.

8. Upon information and belief, Defendant and its agents have, at all times relevant hereto, operated and maintained the Facility located at 410 S. Kirk Road, Kane County, St. Charles, Illinois, 60174.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this Action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because there are 100 or more putative Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000) exclusive of interests and costs. Additionally, at least one, if not all, class member is a citizen of a different state from Defendant.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and because much, if not all, of the property that is the subject of this action is situated in this District.

11. Independent of and in addition to the original jurisdiction under CAFA, this Court has original jurisdiction over this Action under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Parties and the amount in controversy exceeds $75,000.

## GENERAL ALLEGATIONS

12. Defendant owns and operates a dry sausage manufacturing facility located at 410 S. Kirk Road in St. Charles, Illinois.

13. Defendant's business operations at the Facility involves the production of dry sausage, particularly pepperoni and salami, with the capacity to produce around 137 million pounds of these meats annually.

14. Upon information and belief, Defendant's production process generally proceeds as follows:

   a. Meat trimmings are received at the Facility and ground up into a paste;

   b. The ground meat is combined with a mix of spices, salt, nitrates, and phosphates depending on whether salami or pepperoni is being produced;

   c. The mixture is then chilled, cut into the appropriate size, and cooked;

   d. The cooked products are then packaged for shipping and the byproducts and waste from this process are treated at the Facility's wastewater treatment plant.

15. Defendant's industrial processes as the Facility involve substantial pollutants, raw materials, and animal byproducts that are naturally highly odiferous.

16. These byproducts and waste require treatment, and Defendant's Facility features a wastewater treatment facility that processes approximately 90,000 gallons of wastewater every day.

17. Since 2019, the Facility has significantly expanded operations and production capacity. However, Defendant has failed to adequately update or increase the Facility's waste

treatment capabilities, including the wastewater treatment capacity, to compensate for the increase in production.

18. The Facility's increased production has in turn led to increased byproduct wastes that the Defendant is underequipped to properly and adequately treat, which is one of, if not the primary, causes for the proliferation of noxious odor emissions from the Facility.

19. A properly operated, maintained, and/or constructed Facility such as Defendants will not emit noxious odors into the surrounding residential areas.

20. The raw materials utilized and waste products generated at the Facility are noxious and highly odiferous, and its processing operations create the foreseeable risk that noxious odor emissions could be emitted into surrounding residential communities if reasonable steps are not taken to mitigate and control them.

21. Defendant is required to control its odorous emissions by, among other things, properly treating odiferous waste; utilizing adequate odor mitigation and control technologies at the Facility; effectively operating and maintaining its odor mitigation and control techniques to prevent off-site odors; adequately storing and disposing of organic waste utilized during and produced through its industrial processes to prevent off-site odors; and other reasonable odor mitigation, elimination, and control systems available to Defendant.

22. Defendant has, on occasions too numerous to list herein, emitted unreasonable noxious odors into the ambient air outside of the Facility's property boundary.

23. The noxious odors and emissions caused by Defendant's operation of the Facility have been and continue to be dispersed across all public and private land in the Class Area.

24. Defendant's emission control processes are inadequate, improperly maintained and operated, and fail to prevent noxious offsite odors from invading the private property of Plaintiffs and the Class.

25. Defendant has failed to properly construct, operate, and/or maintain its Facility to prevent offensive offsite odor emissions, despite knowledge that its Facility repeatedly and continually emits noxious odor emissions into the ambient air.

26. Defendant has failed to install, operate, maintain, and/or implement adequate odor mitigation and control strategies, processes, technologies, and/or equipment to control its odorous emissions from the Facility and prevent those odors and emissions from invading the homes and properties of Plaintiffs and the putative Class.

27. Defendant's Facility is surrounded by residential properties.

28. On frequent, recurrent, and intermittent occasions too numerous to list individually, Plaintiffs' properties, including Plaintiffs' neighborhoods, residences, and outdoor spaces, have been and continue to be physically invaded by noxious odors.

29. The noxious odors that entered Plaintiffs' properties originated from, and were caused by, Defendant's Facility.

30. Defendant's Facility and its noxious emissions have been the subject of frequent complaints from residents in the nearby residential area.

31. Defendant's negligent and offensive conduct is further evidenced by the following:

   a. According to an August 3, 2023, post on the website for the City of St. Charles, Illinois, '[f]or the past few years, the City has received complaints about an unpleasant odor emanating from the Smithfield Processing Plant on the east side of the city.'

   b. As a result of the consistent complaints concerning the noxious odors from Defendant's facility, as well as Defendant's failure to properly mitigate the odors, the City of St. Charles Government Operations Committee has held multiple

5

       meetings with Smithfield representatives regarding the issues that the odors present in the community.

          i. In August 2023, despite repeated promises from Smithfield that it was taking the odor issue seriously and implementing abatement measures, Alderpersons stated that they and their constituents continued to be plagued by noxious odors from the Facility.

          ii. Expressing the frustrations of their constituents, Committee members relayed concerns about diminished residential property values as a result of the odors, residents being unable to go out on a summer night and enjoy their back patios, and neighbors and friends not wanting to go to a local shopping center near the Facility because they don't want to be exposed to the odors.

    c. In addition to local governmental entities bringing the odors to Defendant's attention, the persistent odor issues from the Facility prompted U.S. Representative Raja Krishnammorthi, who represents Illinois' 8th Congressional District including St. Charles, to call on the United States Environmental Protection Agency and Department of Agriculture to inspect and identify the cause of increased odors from the Facility.

    d. Numerous media reports depict and discuss both the problems caused by the noxious odors from Defendant's Facility and Defendant's unwillingness to mitigate them.

32. Plaintiffs' Counsel have already received numerous complaints directly from nearby residents concerning the offensive odor on their property originating from Defendant's Facility:

    a. Putative Class Members Kaitlyn Gushurst and Brad Reuter report that they "cannot leave apartment windows on sliding glass doors to enjoy outdoor breezes" when the odors are present, which is a "weekly if not daily occurrence."

    b. Putative Class Members Tony and Mary Valentyn stated that they "have moved indoors from outside at times when odors worsened [and] closed windows to prevent odors entering our home."

    c. Putative Class Member Jaclyn Rakers reported that although she spends lots of time outdoors when the weather is nice "when the smell is at its worse I had to move inside. Outdoor meals on the deck have also been interrupted."

6

    d. Putative Class Member Darlene Cleminson stated that "I'm never able to enjoy the fresh air. The smell enters the open door or window. Even shopping at the strip mall has such a smell in the parking lot that is so ugly."

    e. Putative Class Members Valerie and Miguel Velez reported that they "have noticed very strong odors from that Facility" and that they "barely sit in our yard because it smells very bad."

33. Defendant, its predecessors, and/or its agents either constructed or directed the construction of the Facility and Defendant exercises control and ownership over the Facility.

34. Despite clear knowledge of its odor emission problem, Defendant continued to frequently emit severe fugitive off-site odors into the ambient air beyond its property.

35. The foul odors emitted from the Facility are offensive, would be offensive to a reasonable person of ordinary health and sensibilities and have caused property damages.

36. Defendant's noxious odor emissions have caused a substantial and unreasonable interference with Plaintiffs' use and enjoyment of private property.

37. Plaintiffs' properties have been and continue to be physically invaded by noxious odors that have interfered with the use and enjoyment of that property, resulting in damages.

38. The invasion of Plaintiffs' properties and those of the Class by noxious odors has deprived Plaintiffs of the full value of their properties and/or reduced the value of that property, resulting in damages.

39. The Class Area and St. Charles are home to a wide range of commercial and recreational activities including but not limited to dining, industry, construction, retail trade, parks, and education.

40. Plaintiffs and the Class are a limited subset of individuals in St. Charles and the Class Area that includes only owner/occupants and renters of residential property who live within

7

the Class Area and fit within the Class Definition. Plaintiffs and the putative Class are not coterminous with the general public.

41. Members of the public in the Class Area and St. Charles, including but not limited to businesses, employees, commuters, tourists, visitors, customers, clients, and students, have experienced and been harmed by the fugitive noxious odors emitted from the Facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside of the Class Definition have not suffered damages of the same kind, in the form of diminished private property values, deprivation of the full value of Plaintiffs' private property, and/or loss of use and enjoyment of their private property.

42. Plaintiffs and the Class have suffered damages different in kind that are not suffered by the public at large because their injury is an injury to private property.

43. The odors caused by Defendant's Facility have been and continue to be dispersed across public and private land throughout the Class Area.

44. Defendant negligently, knowingly, intentionally, and recklessly failed to properly design, operate, repair, and/or maintain the Facility and its associated operations, thereby causing the unreasonable invasion of Plaintiffs' properties by noxious odors on unusually severe, frequent, intermittent, and ongoing recurring occasions.

## CLASS ALLEGATIONS

### A. Definition of the Class

45. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons preliminarily defined as:

> ***All owner/occupants and renters of residential property residing within one and one half (1.5) miles of the Facility's property boundary within 5 years of the date of filing.***

This definitional boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserve the right to propose one or more subclasses if discovery reveals that such subclasses are appropriate.

46. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23 of the Federal Rules of Civil Procedure in that:

    a. The Class which includes thousands of members, is so numerous that joinder of all members is impracticable;

    b. There are substantial questions of law and fact common to the Class including those set forth in greater particularity herein;

    c. Questions of law and fact such as those enumerated below, which are all common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

    d. The claims of the representative parties are typical of the claims of the Class;

    e. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    f. The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

    g. There are no unusual difficulties foreseen in the management of this class action; and

    h. Plaintiffs, whose claims are typical of those of the Class, through their experienced counsel, will zealously and adequately represent the Class.

**B.    Numerosity**

47. There are thousands of residential households within the Class Area.

48. The Class consists of thousands of members and therefore is so numerous that joinder is impracticable.

**C.    Commonality**

49. Numerous common questions of law and fact exist between Plaintiffs and the Class, including, but not limited to:

    a. Whether and how Defendant negligently, knowingly, intentionally, and/or recklessly failed to design, operate, and maintain the Facility and its operations.

    b. whether Defendant owed any duties to Plaintiffs;

    c. which duties Defendant owed to Plaintiffs;

    d. which steps Defendant has and has not taken in order to control the emission of noxious odors through the construction, design, operation, and maintenance of its Facility and its respective operations;

    e. whether Defendant met its standard of care with respect to its construction, operation, design, and maintenance of the Facility and its operations;

    f. whether and to what extent the Facility's noxious odors were dispersed over the Class Area;

    g. whether it was reasonably foreseeable that Defendant's failure to properly construct, design, operate, and maintain the Facility and its operations would result in an invasion of Plaintiffs' properties interests;

    h. whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference; and

    i. the proper measure of damages incurred by Plaintiffs and the Class.

**D. Typicality**

50. Plaintiffs have the same interests in this matter as all the other members of the Class and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of many of the same material and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

51. The claims of Plaintiffs and the other Class Members have a common cause and their damages are of the same type. The damages of Plaintiffs and the Class are different in kind

than those suffered by other members of the broader community who do not hold private residential property interests. The claims originate from the same failure of the Defendant to properly design, operate, and maintain the Facility and its operations.

52. All Class Members have suffered injury in fact as a result of the invasion of their property by Defendant's release of noxious odors causing damage to their property.

### E. Adequacy of Representation

53. Plaintiffs' claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiffs as representative of the Class. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

54. Plaintiffs have retained the services of counsel who are experienced in complex class action litigation, in particular class actions stemming from invasions of noxious industrial emissions. Plaintiffs' Counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent Plaintiffs and all absent Class Members.

### F. Class Treatment Is the Superior Method of Adjudication

55. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a. Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

   b. Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   c. The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

   d. The proposed class action is manageable.

56. The prosecution of separate actions by or against individual members of the Class would create the risk of (i) inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for the party opposing the Class; and (ii) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

57. Notice can be provided to members of the Class by U.S. Mail and/or publication.

## CAUSE OF ACTION I

## PRIVATE NUISANCE

58. Plaintiffs restate the allegations set forth in all previous paragraphs as if fully rewritten herein.

59. Defendant owed and continues to owe a duty to Plaintiffs and the Class, who are neighboring private property holders, to prevent and abate the interference with, and the invasion of, their private property interests.

60. The noxious odor emissions that entered Plaintiffs' properties originated from the Facility constructed, designed, maintained, and/or operated by Defendant.

61. The odors invading Plaintiffs properties are indecent and offensive to the senses, obstruct the free use of their property, and substantially and unreasonably interfere with the comfortable enjoyment of life and/or property, including but not limited to the following ways:

   a. Causing Plaintiffs and the Class discomfort and to remain in their homes and forgo use of their yards, porches, and other outdoor spaces of their properties;

   b. Causing Plaintiffs and the Class to keep doors and windows closed when weather conditions otherwise would otherwise not require them to do so;

    c.   Depriving Plaintiffs and the Class of the full value of their homes and properties;

    d.   Causing Plaintiffs and the Class embarrassment, inconvenience, discomfort, and reluctance to engage in outdoor activities and invite guests to their homes.

62. The odors emitted from Defendant's Facility constitute a substantial and unreasonable invasion of Plaintiffs' interests in the use and enjoyment of their properties.

63. Defendant's invasion of Plaintiffs' properties by noxious odors was the result of intentional, reckless, and/or negligent conduct.

64. As stated above, dozens of putative class members have complained to the City of St. Charles and Plaintiffs' Counsel concerning the noxious odors emitted from Defendant's Facility.

65. Defendant is aware of the odors that emanate from its facility and has knowledge of the significant impacts the odors have on nearby residents' lives, yet has failed to adequately abate or correct the conditions causing the nuisance odors.

66. Plaintiffs and the Class have suffered physical damages to property as a result of Defendant's nuisance odor emissions, including interference with the use and enjoyment of property, deprivation of full value of property, diminution of property value, and discomfort, annoyance, and inconvenience as alleged herein.

## CAUSE OF ACTION II

## PUBLIC NUISANCE

67. Plaintiffs restate the allegations set forth in all previous paragraphs as if fully rewritten herein.

68. Plaintiffs and the Class utilized their property as residences and all reside within the Class Area.

69. Defendant's operation and/or maintenance of its Facility is the proximate cause of the noxious odors that enter Plaintiffs' properties.

70. The unreasonable odors caused by Defendant's Facility have been and continue to be dispersed across public and private land throughout the Class Area.

71. By failing to reasonably design, operate, repair, and maintain its Facility, Defendant has caused an invasion of Plaintiffs' properties by noxious odors on unusually frequent occasions too numerous to individually list herein.

72. The noxious odors invading Plaintiffs' properties are indecent and offensive to Plaintiffs and the Class, indecent and offensive to individuals with ordinary sensibilities, and obstruct the free use of Plaintiffs' properties so as to substantially and unreasonably interfere with the comfortable enjoyment of life and property.

73. Defendant knew that it was emitting noxious odors onto neighboring properties yet failed to take reasonably adequate steps to abate the nuisance.

74. Defendant owed and continues to owe a duty to Plaintiffs and the Class to prevent and abate the interference with, and the invasion of, their private interests.

75. Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public air and spaces by emitting noxious odors into the ambient air.

76. Defendant, by failing to reasonably repair, operate, and/or maintain its Facility so as to prevent the emission of noxious odors has acted, and continues to act, intentionally, negligently, and with conscious disregard to public health, safety, peace, comfort, and convenience.

77. As a foreseeable, direct, and proximate result of Defendant's conduct as described herein, Plaintiffs and the Class have suffered damages to their property.

78. By causing noxious odors that physically invaded Plaintiffs' properties, Defendant created a nuisance which substantially and unreasonably impaired Plaintiffs and the Class's use and enjoyment of their properties on unusually frequent occasions too numerous to individually identify.

79. Such substantial and unreasonable interference includes, but is not limited to:

    a. Loss of use and enjoyment of the outdoor spaces of Plaintiffs' properties or ability to open windows due to the presence of noxious odors;

    b. Diminution of the value of Plaintiffs and the Class's properties and depriving them of the full value of their properties;

    c. Annoyance, inconvenience, and discomfort, including but not limited to, inability to open windows and/or utilize outdoor spaces when odors are present and inability to invite guests to property due to the embarrassment and annoyance of the noxious odors invading Plaintiffs' properties.

80. Apart from the private property damages incurred by Plaintiffs and the Class, Defendant's emissions have substantially interfered with rights common to the general public, including the right to breathe uncontaminated and/or unpolluted air.

81. Plaintiffs suffered and continue to suffer special harm to private property interests, including interference with the use and enjoyment of private land and property, deprivation of the full value of private property, and diminished property values. These damages are difference in kind, separate, and in addition to the damages suffered by the public at-large exercising the common right to breathe uncontaminated and unpolluted air.

82. Plaintiffs did not consent to noxious odors entering their properties.

83. Defendant's substantial and unreasonable interferences with Plaintiffs' properties rights constitutes a nuisance for which Defendant is liable to Plaintiffs and the Class for all damages arising from such nuisance, including compensatory, injunctive, exemplary, and/or punitive damages.

## COUNT III

## NEGLIGENCE

84. Plaintiffs restate the allegations set forth in all previous paragraphs as if fully rewritten herein.

85. In constructing, maintaining, operating, controlling, engineering, and/or designing the Facility, Defendant owes a duty to Plaintiffs and the Class to exercise ordinary care and diligence to prevent noxious odors from invading Plaintiffs' properties.

86. Defendant knowingly breached its duty to exercise ordinary care and diligence when it improperly constructed, maintained, operated, engineered, and/or designed the Facility and knew, or should have known, that such actions would cause Plaintiffs' properties to be invaded by noxious odors.

87. As a direct and proximate result of Defendant's failure to exercise ordinary care, Plaintiffs' properties have been and continue to be physically invaded by noxious odors.

88. As a direct and proximate result of Defendant's negligent construction, maintenance, operation, engineering, and/or design of the Facility, Plaintiffs' properties are exposed to and invaded by noxious odors.

89. As a direct and proximate result of the invasion of Plaintiffs' properties by noxious odors, Plaintiffs have suffered damages.

90. Defendant is vicariously liable for the negligence of its employees, representatives, and agents, who, during the course and scope of their employment, allowed or failed to correct the problems that caused noxious odors to physically invade Plaintiffs' properties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

A. Certification of the proposed Class pursuant to Federal Rule of Civil Procedure 23;

B. Designation of Plaintiffs as representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of Plaintiffs and the Class Members and against Defendant;

D. An Order holding that entrance of the aforementioned noxious odors upon Plaintiffs' properties constituted a nuisance;

E. An Order holding that Defendant was negligent in its construction, design, operation, and maintenance of the Facility;

F. An award, to Plaintiffs and the Class, of compensatory and punitive damages and attorneys' fees and costs, including pre-judgment and post-judgment interest thereupon;

G. An award to Plaintiffs and the Class Members of injunctive relief not inconsistent with Defendant's state and federal regulatory obligations; and

H. Such further relief both general and specific as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues raised in this Complaint.

Respectfully Submitted,

*/s/Marshall P. Whalley*_____
Marshall P. Whalley # 6187257
**MARSHALL P. WHALLEY & ASSOCIATES, P.C.**
51 W. 112th Ave.
Crown Point, IN 46307
(219) 769-2900
marshall@marshallslaw.com
*Attorneys for Plaintiffs*